UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAVID HALE, | : | Case No. 3:16-cv-257 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

Plaintiff David Hale brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  He applied for benefits in November 2009, asserting that he could no longer work a substantial paid job.  Administrative Law Judge (ALJ) Mary F. Withum concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and he filed an action in United States District Court for the Southern District of Ohio.  *See Hale v. Commissioner of Social Security*, 3:13-cv-182, 2014 WL 4829539 (S.D. Ohio Sept.29,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

2014) (D.J. Rice).  The Court reversed the Commissioner's decision and remanded the case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.  *Id.* at *2.  On January 4, 2016, ALJ Elizabeth A. Motta concluded Plaintiff was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record (Doc. #s 6-7), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Motta's non-disability decision.

## II.  Background

Plaintiff asserts that he has been under a "disability" since September 21, 2009.  He was thirty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  He has a high school education.  *See* 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2).

### A.  Hearing Testimony

#### i.  Plaintiff

On April 29, 2015 and September 9, 2015, Plaintiff testified at the hearings before ALJ Motta.  He explained that he cannot work because of the symptoms of his Crohn's disease—specifically, abdominal pain and frequent diarrhea.  (Doc. #7; *PageID* #683).  He was diagnosed in 2001 and continued to work until his doctor told him to "take long-

term disability" because he missed a lot of work and had accidents frequently. *Id.* at 681-83.

Plaintiff has between ten and twenty bowel movements a day. *Id.* at 691, 714. There is no schedule, "They come unannounced. They're just - - and I get to a bathroom in 30 seconds, or it's on me." *Id.* at 692. They are never formed bowel movements. *Id.* at 691. Between 4 a.m. and the time of the hearing (11:47 a.m.), Plaintiff had gone to the bathroom eight times. *Id.* at 675, 687. Generally, he is in the bathroom for fifteen minutes because "[t]he pain doubles me over." *Id.* at 693.

Plaintiff self-administers Humira injections every other week. *Id.* at 718. But he has not seen any improvement. *Id.* at 684. Instead, it has gotten worse: "I'm still having accidents, still pooping on myself. The urgency to get to a bathroom quick has gotten worse." *Id*. Plaintiff wore adult undergarments but it became too expensive and people made fun of him. *Id.* at 688. He carries extra pairs of underwear, pants, and socks instead. *Id*.

Plaintiff always has abdominal pain. *Id.* at 690. It is sometimes so severe that it feels "like someone's gutting me." *Id*. He takes Percocet for the pain. *Id.* at 687. He also experiences fatigue because he cannot sleep through an entire night. *Id.* at 695.

When asked if Crohn's disease has had an emotional impact on him, Plaintiff explained, "I don't have a life. My wife [and] I just separated … due to the fact that she wants to go out and do family things. You know, go to Golden Corral or whatever; go to Kings Island or whatever. I can't do it. I have no friends." *Id.* at 694. His family doctor

prescribes Xanax for anxiety and depression. *Id.* at 696. Plaintiff also has vertigo that is controlled by medication. *Id.* at 688.

Plaintiff is separated from his wife and has shared parenting of their five-year-old daughter. *Id.* at 679-80. During the week, his daughter lives with him. *Id.* at 679. He has a driver's license and generally drives four times a week. *Id.* at 680.

### ii. Haddon Christopher Alexander, M.D.

Dr. Alexander testified that Plaintiff has the severe impairments of Crohn's disease and Ménière's disease—originally diagnosed as benign positional vertigo. *Id.* at 710-11. He opined that neither impairment meets or equals a listing. *Id.* at 712. However, some limitations are warranted—primarily because of vertigo. *Id.* at 713. Specifically, Plaintiff cannot climb ropes, ladders, or scaffolding and cannot work around unprotected heights, open flames, open water, or heavy machinery with rapidly moving parts. *Id.*

When asked by ALJ Motta if there was evidence that would support the degree of severity alleged by Plaintiff, Dr. Alexander testified that the colonoscopy from August 5, 2015 revealed chronic active colitis at the anastomosis. *Id.* at 715. He opined that it was grounds for some subjective complaints. *Id.* However, "15 to 20 bowel movements a day … should produce evidence for malabsorption, low albumin, anemia, weight loss or difficulty maintaining weight. And here we have a person with a body mass index of 31." *Id.*

Dr. Alexander acknowledged, "I'm not his treating physician. I'm not in a position to base my observations on the acceptance of the credibility of what he's

4

alleging when he comes in and says he's having 20 bloody stools a day." *Id.* at 719. Additionally, he is not a gastroenterologist specialist. *Id.*

    B.    **Medical Opinions**

        i.    **Richard Gaeke, M.D.**

Dr. Gaeke, Plaintiff's treating gastroenterologist, has completed several forms and/or letters related to Plaintiff's condition. On March 29, 2010, Dr. Gaeke indicated Plaintiff does not have a history of any mental impairment. (Doc. #6; *PageID* #449). He noted on October 20, 2011, that he had advised Plaintiff to stop working and that he was unable to return to work because of his symptoms and medication. *Id.* at 543-46.

On November 22, 2011, Dr. Gaeke wrote a letter: "Mr. Hale's Humira was discontinued because he couldn't bear the expense. The lack of subjective clinical improvement would have required a change in strategy in any case." *Id.* at 547.

Dr. Gaeke completed interrogatories on February 9, 2015. (Doc. #7, *PageID* #s 1401-05). He indicated that he first treated Plaintiff on August 3, 2004 and had last seen him on January 29, 2015. *Id.* at 1401. He opined that because Plaintiff "has twenty or more urgent bloody diarrhea stool daily accompanied by abdominal pain and nausea," he could not be prompt and regular in attendance; withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of decompensation or worsening of his impairments; sustain attention and concentration; demonstrate reliability; perform activities within a schedule and be punctual; and complete a normal workday and workweek without interruption from symptoms and perform at a consistent pace. *Id.* at 1402-04. Additionally, Plaintiff's impairments and

5

treatment would cause him to be absent from work more than three time a month. *Id.* at 1405.

Dr. Gaeke wrote a second letter on September 2, 2015. *Id.* at 1422. He indicated that Plaintiff suffers from Crohn's Disease and had an ileocolonic resection in 2001. *Id.* Despite treatment, "[h]e continues to suffer from multiple episodes of bloody diarrhea (some days as many as twenty), nausea, vomiting, musculoskeletal pain and abdominal pain on a daily basis." *Id.* Plaintiff was also treated for GERD, vertigo, and depression. *Id.* Dr. Gaeke opined, "Mr. Hale is unable to maintain employment due to the severity and refractory nature of his symptoms." *Id.*

### ii. Elizabeth Das, M.D., & Arthur Sagone, M.D.

Dr. Das reviewed Plaintiff's records on March 1, 2010. (Doc. #6, *PageID* #s 440-47). She opined Plaintiff could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds. *Id.* at 441. He could stand, walk, or sit for a total of six hours each. *Id.* She noted that he has Crohn's disease with chronic inflammation and chronic diarrhea. *Id.* Dr. Das did not find that Plaintiff had any other limitations. *Id.* at 442-44.

On August 16, 2010, Dr. Sagone reviewed Plaintiff's records and affirmed Dr. Das's findings. *Id.* at 473.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

6

U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647,

651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Motta to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since September 21, 2009.

Step 2: He has the severe impairment of Crohn's Disease.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a reduced range of light work …: (1) lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; (2) occasional postural activity, such as balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; (3) no climbing ladders, ropes or scaffolds; (4) no exposure to hazards such as open flames or open water, heavy machinery with

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

8

>rapidly moving parts or working at unprotected heights, no dangerous machinery; (5) no exposure to vibration; (6) low stress work defined as no strict production quotas or fast pace; (7) normal restroom access such as in a normal office (that is no unusual distances to a restroom such as when working outdoors and having to walk inside) and not have to be replaced by another worker before he can go to the restroom; (8) no contact with the public as part of job duties; and (9) the individual could be off task five percent of the workday beyond normal breaks (for those times he may need extra restroom time)."

Step 4:  He is unable to perform any of his past relevant work.

Step 5:  He could perform a significant number of jobs that exist in the national economy.

(Doc. #7, *PageID* #s 582-98). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 597.

## V. Discussion

Plaintiff contends that the ALJ failed to properly consider the medical opinions of record and failed to properly evaluate his credibility, pain, and symptom severity. The Commissioner maintains that substantial evidence supports the ALJ's assessment of the opinion evidence and Plaintiff's credibility.

### A. Dr. Gaeke's Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

>Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported

9

>by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Motta gave Dr. Gaeke's opinion "some weight because his diagnosis of Crohn's disease is consistent with the medical record and [Plaintiff] takes medication for the condition." (Doc. #7, *PageID* #595). However, she found that his "opinions are not entitled to significant or deferential weight" and provided some reasons for her conclusions. *Id.*

ALJ Motta first discussed inconsistency: "Dr. Gaeke's opinions are inconsistent with not only the objective and clinical findings, they are inconsistent with the nature and frequency of treatment he provided." *Id.* She notes that several colonoscopies "revealed only small and isolated areas of mild colitis." *Id.* Additionally, "his physical examinations generally note benign findings and he consistently reports that [Plaintiff's] symptoms are stable on Humira and that his pain was adequately controlled with medication." *Id.* Further, ALJ Motta notes that Dr. Gaeke did not document "signs consistent with the frequency of bowel movements alleged, such as weight loss, malabsorption, or albumin abnormalities." *Id.* Instead, his notes reveal Plaintiff gained sixty pounds since he began treatment with Dr. Gaeke.

Presumably, when the ALJ discusses inconsistency, she is referring to the second condition of the treating physician rule—whether the opinion is not inconsistent with the other substantial evidence in the record. The Social Security Administration defines "not inconsistent:" "This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., *it does not have to be consistent with all the other evidence*) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. R. 96-2p, 1996 WL 374188, at *3 (emphasis added).

ALJ Motta did not identify any evidence that contradicts or conflicts with Dr. Gaeke's opinion. The evidence identified by ALJ Motta as inconsistent is merely one part of a much larger record that is "not inconsistent" with Dr. Gaeke's opinions.

11

Dr. Gaeke's treatment notes—when reviewed in their entirety—are consistent with his opinion. They begin in March 2005 with Plaintiff reporting uncontrolled pain and diarrhea. (Doc. #6, *PageID* #525). By March 2006, Plaintiff was in so much pain, he "felt like I wanted to die." *Id.* at 524. Dr. Gaeke noted in August 2008 that Remicade was not effective. *Id.* at 417. In May 2009, he indicated, "Crohn's disease [probably] better on Humira," but Plaintiff was missing work due to chronic abdominal pain and diarrhea. *Id.* at 410. On August 13, 2009, Plaintiff was "very tearful" as he reported "bad diarrhea" of at least fifteen watery stools per day. *Id.* at 405. Dr. Gaeke noted, "suspect small bowel bacterial overgrowth [and] bile acid malabsorption." *Id.* at 406. In December 2009, Plaintiff's Crohn's disease "subjectively improved since switching from Remicade to Humira"; he reported eight to nine watery stools per day. *Id.* at 471-72. And on April 1, 2010, Dr. Gaeke noted, "Overall feels better on Humira but Rx to decrease stool frequency has been of little use." *Id.* at 466. In January 2014, Plaintiff reported fifteen to twenty liquid stools per day and stabbing pain in his abdomen. (Doc. #7, *PageID* #977). Dr. Gaeke noted, "Chronic pain [and] diarrhea stable on opiate, Humira, Imodium." *Id.* at 978. Notably, Dr. Gaeke does not indicate that Plaintiff's pain decreased with an opiate or that his diarrhea stopped—or even slowed down—with medication. Instead, he indicates that it is stable: it has not changed.

ALJ Motta relied heavily on Dr. Alexander's testimony to conclude Plaintiff's weight gain "is inconsistent with the frequency and severity of [Plaintiff's] alleged bowel symptoms." *Id.* at 595. However, she omits crucial details of his testimony. Dr. Alexander recognized, "I'm not his treating physician. I'm not in a position to base my

12

observations on the acceptance of the credibility of what he's alleging when he comes in and says he's having 20 bloody stools a day." *Id.* at 719.  Additionally, "I'm not able to use anything but objective evidence …." *Id.* at 718.  This testimony illustrates the significant difference between treating and non-treating physicians.  Notably, the Social Security Administration generally gives "more weight" to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that *cannot be obtained from the objective medical findings alone* or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2) (emphasis added).

ALJ Motta also addresses the first condition of the treating physician rule—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  She concluded, "Dr. Gaeke has not provided any information supporting his opinion beyond [Plaintiff's] subjective statements concerning his bowel movements." (Doc. #7, *PageID* #595).  More specifically, "he unquestionably accepts [Plaintiff's] allegations concerning pain and frequency of bowel movements and that those statements are the primary basis for his opinions." *Id.*

ALJ Motta's conclusion is not supported by substantial evidence.  As explained in detail above, Dr. Gaeke's treatment notes consistently document severe diarrhea and pain for fifteen years.  Notably, "a physician's job is not to question his or her patient's statements, but is rather to match those statements with a diagnosis." *Felisky v. Bowen*, 35 F.3d 1027, 1040 (6th Cir. 1994).  The ALJ provides no reason why Dr. Gaeke should

13

doubt fifteen years of consistent statements by Plaintiff. Further, Dr. Gaeke performed at least six colonoscopies, all of which showed some evidence of Crohn's disease. For example, in August 2015, "[s]ections of the anastomosis biopsy reveal[ed] patchy mild chronic active colitis associated with [an] acute erosion and focal crypt architectural distortion." (Doc. #7, *PageID* #1419).

The Social Security Administration explains, "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be *fully* supported by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (emphasis added). And in this case, Dr. Gaeke's opinion is—at the very least—supported by the record.

But, even if Dr. Gaeke's opinions are not entitled to controlling weight, ALJ Motta's review is not complete: "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Id.* at *4.

ALJ Motta failed to consider several of the factors. For example, she does not acknowledge that Dr. Gaeke is the only doctor who provided an opinion that examined Plaintiff. *See* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Further, the ALJ does not recognize the significant treatment relationship between Dr. Gaeke and Plaintiff. *See id.* (c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's

14

medical opinion more weight than we would give it if it were from a nontreating source."). At the time of the decision, Dr. Gaeke had treated Plaintiff for over fifteen years—since at least 2004. Further, between 2009 and 2015, Dr. Gaeke examined Plaintiff at least eighteen times and performed six colonoscopies. *See id.* ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). ALJ Motta does not acknowledge that Dr. Gaeke has specialized in gastroenterology since 1980 and is board certified in internal medicine and gastroenterology. (Doc. #7, *PageID* #1401); *see id.* (c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

ALJ Motta provided one other reason for discounting Dr. Gaeke's opinions: "his general statements that the claimant cannot work do not set forth functional limitations and, in addition, are simply general statements that infringe on the ultimate issue of disability, which is a question reserved to the Commissioner." (Doc. #7, *PageID* #595) (citation omitted). However, the fact that Dr. Gaeke expressed an opinion on the ultimate issue of Plaintiff's disability status is not a valid reason to discount or ignore it. "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' That's not the same thing as saying that such a statement is improper and therefore to be ignored...." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (internal citation omitted); *see Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 409 F. App'x 852, 861 (6th Cir. 2011)

15

("the fact that the ultimate determination of disability, *per se,* is reserved to the Commissioner, 20 C.F.R. § 404.1527(e) [§ 416.927(d)(1)], did not supply the ALJ with a legitimate basis to disregard the physicians' [opinions].").

### B. Remand

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. "Generally, benefits may be awarded immediately 'only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" *Kalmbach*, 409 F. App'x at 865 (quoting, in part, *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176.

Review of the evidence of record, including Plaintiff's medical history and the medical-source opinions, reveals the presence of strong evidence that Plaintiff was under a benefits-qualifying disability. The strong evidence includes opinions presented by Plaintiff's treating gastroenterologist, Dr. Gaeke, along with his treatment records.

Dr. Gaeke indicated Plaintiff "has twenty or more urgent bloody diarrhea stool daily." (Doc. #7; *PageID* # 1402). This averages almost one per hour. ALJ Motta's RFC allows Plaintiff to be off task five percent of the workday beyond normal breaks.

16

*Id.* at 590. Straightforward math shows five percent of eight hours is twenty-four minutes. Plaintiff testified that each time he has diarrhea, he is in the bathroom for fifteen minutes. *Id.* at 693. Thus, ALJ Motta's limitation to five percent or twenty-four minutes would allow Plaintiff almost two additional times to use the bathroom. Assuming his lunch and breaks coincided with when he needed to use the bathroom, he would have five opportunities to use the bathroom at work if he works eight-hour days. If on average Plaintiff has diarrhea once every hour, then five breaks in an eight-hour day is insufficient.

Vocational expert Suman Srinivasan testified that it would be difficult for an individual to sustain competitive work if he was off task more than ten percent of the workday. Ten percent of eight hours is forty-eight minutes. This would allow Plaintiff a little over three extra breaks—still not enough time for Plaintiff to use the bathroom eight times. Because of Plaintiff's frequent need to use the bathroom, he would be off task— on average—more than ten percent of the time, and therefore, he cannot sustain competitive employment.

The Commissioner is correct to rely upon evidence in the record that tends to be contrary to the conclusion that Plaintiff was under a disability, namely the opinions of the medical examiner and State agency record-reviewing physicians. However, upon review of the record as a whole, and given that Dr. Alexander did not have the benefit of examining Plaintiff and the State agency physicians completed their reviews in 2010, their opinions are minimally probative. This is especially true when compared to

17

Plaintiff's treating doctor's opinions and extensive treatment notes and the objective medical evidence presented which supports his opinions.

In light of the fact that Plaintiff filed for disability over five years ago, and in light of the strong evidence of record while contrary evidence is lacking, there is no just reason to further delay this matter by requiring additional administrative proceedings. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

Accordingly, a reversal of the ALJ's decision and a judicial award of benefits are warranted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be REVERSED;

2. This case be REMANDED to the Commissioner of the Social Security Administration under sentence four of 42 U.S.C. §405(g) for payment of benefits; and

3. The case be terminated on the docket of this Court.

Date: July 28, 2017                    *s/Sharon L. Ovington*
                                       Sharon L. Ovington
                                       United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).